# Cumberland Valley Railroad Company *v.* Gettysburg and Harrisburg Railway Company.

*Equity—Supplemental bill—Res adjudicata.*

Where an appeal court has approved the findings of fact and conclusions of law of the lower court in a suit in equity, the plaintiff will not be permitted, sixteen months after the decree of the appellate court was filed, to file additions to the original bill, where it appears that the additions proposed would, if allowed, result in a review of matters included in the original bill, which have already been adjudicated.

Argued April 24, 1899. Appeal, No. 237, Jan. T., 1898, by plaintiffs, from decree of C. P. Cumberland Co., May T., 1893, No. 1, on bill in equity, in case of Cumberland Valley Railroad Company and the Pennsylvania Railroad Company v. Gettysburg & Harrisburg Railway Company, the Philadelphia & Reading Railroad Company, the Hunter's Run and Slate Belt Railroad Company and Edward M. Paxson, Elisha P. Wilbur and Joseph S. Harris, receivers of the Philadelphia and Reading Railroad Company. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Additions to original bill in equity.
The case was previously reported in 177 Pa. 519.
The additions were in substance as follows :

## I.

1. Refers to the agreement of September 30, 1882, and states that under it, from 1884 to July 1, 1891, the parties to it apportioned the earnings from joint business on a mileage basis of twenty-mile blocks.

2. Shortly before July 1, 1891, the third and fourth parties to the agreement were merged into the Gettysburg & Harrisburg Railway Company, and that the operating officers of the Philadelphia & Reading Railroad, which had assumed control of the Gettysburg & Harrisburg Railway Company, imposed as to the Cumberland Valley Railroad Company, a division on the basis of fifty-mile blocks, and as to the Pennsylvania Railroad exacted certain arbitraries thereon set forth.

3. That the plaintiffs, in order to do business with the Gettys-

burg & Harrisburg Railway Company, had to submit to said basis of division and said arbitraries. They do not complain of the fifty-mile block basis so long as more favorable terms are not given to any other party, but assert that the arbitraries exacted are unjust and injurious to both the plaintiffs.

4. That the original bill complained of the rates of division exacted but the Supreme Court ruled that plaintiffs were premature in appealing upon that branch of the case and should await the daily operations of the roads and that such daily operation of the roads now show that the division exacted is unjust to the plaintiffs and inequitable under the contract.

5. Refers to clause in the agreement that all traffic tendered is to be received and promptly forwarded by the defendants upon terms as favorable as those given to any other railroad. Avers that the fifty-mile block basis given to the Cumberland Valley and other railroads is more favorable than the arbitraries demanded from the Pennsylvania and which have been insisted upon from July 1, 1891 to the filing of this addition to the original bill and are now insisted upon.

6. That since the decree for the specific performance of the contract of September 30, 1882, was affirmed, the Gettysburg & Harrisburg Railway Company has been asked to abolish the arbitraries and to adopt a mileage basis for division of earnings but the request has been refused and the arbitraries have been and are now insisted upon. Avers that before July 1, 1891, a large volume of business was exchanged and that since then and now, by reason of the arbitraries exacted, the business could not be competed for. That the arbitraries gave to the Gettysburg & Harrisburg Railway more than its just share under the contract and in consequence thereof less business was exchanged from and after July 1, 1891, and now, than before and the Cumberland Valley Railroad Company lost the traffic it was entitled to on its line between Harrisburg and Gettysburg junction and the profits therefrom that it was entitled to under the contract.

7. That since July 1, 1891, the earnings should have been apportioned between the plaintiffs and the Gettysburg & Harrisburg Railway on a mileage basis of fifty-mile blocks and such should be the apportionment unless more favorable terms be given to some other party.

## II.

1. Charges that the Gettysburg & Harrisburg Railway Company, since July 1, 1891, has refused to send to destinations all traffic controlled by it, and which it could lawfully send by the lines of the plaintiffs, and that by reason of this breach the plaintiffs have suffered a great loss, and they aver that under the contract there was a fair profit on the traffic exchanged.

2. Charges that from the opening of the Gettysburg & Harrisburg Railway to July 1, 1891, close connections were made with passenger trains at Gettysburg junction, and a large passenger traffic was exchanged and large profits made therefrom. This close connection was broken on July 1, 1891, by the Gettysburg & Harrisburg Railway Company, and continued against the protest of the plaintiffs to the filing of the bill, March 4, 1893, thence to the decree in the court below on November 7, 1895, and thence to December 1, 1896, when they were restored. From July 1, 1891, to December 1, 1896, it charged local rates for each passenger by plaintiffs' lines, although such rates were not charged on passengers from the Philadelphia & Reading Railroad lines, which had through rates and a division of earnings on a mileage basis, when by the agreement passenger and freight earnings should have been apportioned with the plaintiffs on a mileage basis. By reason thereof the passenger business of the plaintiffs with the Gettysburg & Harrisburg Railway Company was greatly lessened, and passenger excursions broken up, and the plaintiffs sustained great loss.

3. The refusal of the Gettysburg and Harrisburg Railway Company to apportion earnings from joint business with the plaintiffs on a mileage basis, and the exaction of arbitraries, was and is a violation of the agreement, and injurious to plaintiffs, and the plaintiffs have sustained loss therefrom by reason of the exchange of less business and at a less profit than they otherwise would have had.

The prayers were:

1. For an apportionment on a fifty-mile block basis unless and until more favorable terms be given to some other party.

2. For payment of damages sustained, and for an accounting to ascertain the amount thereof.

3. For general relief.

An answer was filed, and the court, by BIDDLE, P. J., filed the following opinion:

Sur motion of plaintiffs for leave to file additions (by way of supplement) to the bill.

The bill in this case was filed on March 4, 1893, and it specifically charged, among other things, that ever since the Philadelphia & Reading Railroad Company obtained control of the Gettysburg & Harrisburg Railway Company, in May, 1891, the last named company had continuously violated the agreement of September 30, 1882, in the following respects:

" 3. It has failed and refused to apportion the earnings of the plaintiffs and the first named defendant from joint business exchanged with that part of the consolidated road, which constituted, before the merger, the Gettysburg & Harrisburg Railroad, to and between the parties on a mileage basis, although a mileage basis had been agreed on between the parties to said agreement, in conformity with its provisions, and continued to be used until the change of control, hereinbefore mentioned."

" 5. It has failed and refused to apportion to and between the Pennsylvania Railroad Company, the Cumberland Valley Railroad Company and the Gettysburg & Harrisburg Railway Company, on a mileage basis, the earnings from joint business in coal and other freight from and to the Pennsylvania Railroad, and lines controlled by it, passing over the Cumberland Valley Railroad to and from points on the line of the Gettysburg & Harrisburg Railway Company, but has charged specific rates to and from Carlisle on such freight, although the said defendant, the Gettysburg & Harrisburg Railroad Company, has so prorated the earnings from joint business in coal and other freight exchanged with the Philadelphia & Reading Railroad Company and the Philadelphia, Harrisburg & Pittsburg Railroad Company."

These allegations were positively denied in the answer and an issue of fact was thus made up. A large amount of testimony having been taken, the court embodied its conclusions on the subject in the following language under the caption, " Mileage Basis:"

" We are asked by the plaintiffs to decree that the Gettysburg & Harrisburg Railway Company shall apportion upon a mileage basis the earnings arising from joint business exchanged

by it with the lines of plaintiffs, and to adjudge the twenty-mile block system to be a proper basis for apportionment. Upon the subject of the division of earnings, the only provision in agreement is that 'the earnings from joint business exchanged with the Gettsyburg & Harrisburg Railroad shall be apportioned to and between the parties hereto on such a mileage basis as shall be agreed upon between the parties hereto.'"

It will be noticed that this applies only to business exchanged with the party of the fourth part and not to business interchanged among the other three parties, and that it does not fix a definite mileage basis. Prior to July 1, 1891, the earnings arising from joint business were divided on a twenty-mile block basis. The testimony in the case is to the effect that this division was inequitable to the Gettysburg & Harrisburg Railway Company and that the said company could not continue to exist under such an arrangement. On June 4, 1891, at a meeting between the representative freight agents of the Cumberland Valley Railroad Company and the Philadelphia & Reading Railroad Company, a memorandum was made of a proposed division of the earnings from freight traffic exchanged between the former company and the Gettysburg & Harrisburg Railway Company, on a fifty-mile block basis, which proposed division was subsequently declared by the general freight agent of the former company to be satisfactory, and it only went into effect on July 1, 1891. The same through rates were continued in force as previously, the only change being in the method of apportionment between the two companies. An arrangement by which "arbitraries" were charged on business exchanged between the line of the Gettysburg & Harrisburg Railway Company and the line of the Pennsylvania Railroad Company also went into effect on the same date. These arbitraries which were ostensibly "figured on a basis of fifty miles for all points on the Gettysburg & Harrisburg Railway," in reality constituted charges on the basis of blocks of 100 miles, and they were intended to give the average charges upon that block system. The division between the Gettysburg & Harrisburg Railway Company and the Philadelphia & Reading Railroad Company was·upon the same mileage block basis. Special arbitraries for anthracite coal, etc., were also fixed. The above mentioned rates have continued in force ever since. On December 13,

1891, Thomas B. Kennedy, president of the Cumberland Valley Railroad Company, wrote to A. A. McLeod, president of the Gettysburg & Harrisburg Railroad Company, complaining of various alleged infractions by the latter company of the provisions of the agreement of September 30, 1882. Their correspondence on the subject appears in evidence. After a careful consideration of all the facts in the case, we are satisfied that the court would not be justified in adjudging the twenty-mile block system to be a proper basis for apportionment of joint earnings, and further, that there is not anything in the bill taken in connection with the evidence which would warrant a decree of any kind in relation to a mileage basis.

The decree entered in the case was affirmed by the Supreme Court after a consideration of numerous exceptions filed, yet in face of the above it is now sought to take up the subject anew, and a second time go over the ground covered by the original investigation. There are two proposed additions to the bill, and two corresponding prayers. The first addition and prayer relate to the apportionment of joint earnings between the plaintiffs and the Gettysburg & Harrisburg Railway Company on the basis of fifty-mile blocks, thereby doing away with " arbitraries," whilst the second are for the purpose of obtaining a decree against said railway company for damages arising from various alleged violations of the agreement of September 30, 1882. Much of the matter which composes the first addition arose before the bill was filed, and is covered by the pleadings, evidence and decree. The declared and only purpose of this addition being to reopen the hearing as to " arbitraries" and the mileage basis, it cannot be allowed, for the reason that the original bill was proceeded with to final decree, and it was then determined that the " arbitraries" complained of are not violative of the agreement of September 30, 1882.

Neither is the second addition allowable, which is for the recovery of damages, because the bill did not contain either a complaint or prayer in relation to damages, and the insertion of such matter now, after final hearing and decree, would be without warrant in equity practice.

It will be noticed that in neither of the proposed additions is there an averment of mistake or imperfection in the bill, or of any accidental omission therefrom, or that the material issues were not clearly defined throughout the litigation.

And now, May 3, 1896, the motion for leave to file additions (by way of supplement) to the bill is refused.

*Error assigned* was the decree of the court.

*D. Watson Rowe* and *John Hays*, with them *E. B. Watts*, for appellant.—If the parties cannot agree, the court only can decide the proper mileage basis. The Supreme Court recognizes that the arbitration clause may be "ineffective" or "unavailing." The arbitration clause will not prevent a decree of specific performance: Bald Eagle Valley R. R. Co. v. Nittany Valley R. R. Co., 171 Pa. 284; Union Pac. R. R. Co. v. Chicago, etc., R. R. Co., 51 Am. & Eng. Railroad Cases, 162.

Where the plaintiff has omitted to claim damages in his original bill or by amendment during the progress of the case, he will be permitted to claim them by supplemental bill if the case be not finally ended. A final decree is not a bar: Head v. Meloney, 111 Pa. 99; Gwinn v. Lee, 6 Pa. Superior Ct. 646; Act of May 4, 1864, P. L. 775; Clark v. Pittsburg Natural Gas Co., 184 Pa. 188; Miller v. McDonald, 8 W. N. C. 502; Miller v. Billington, 184 Pa. 583.

The damages in the case, if any, must be recovered in equity, because the accounts will be complicated and not suitable for a jury's investigation, and equity affords the most convenient remedy: Johnston v. Price, 172 Pa. 432; Brush Electric Company's App., 114 Pa. 574; Conemaugh Gas Co. v. Jackson Farm Gas Co., 186 Pa. 443.

But at all events damages must be recovered, if at all, in this suit in equity. This court having had jurisdiction of the principal matter, the specific performance of the contract, it will decide every question in the case, and no action at law will lie for the damages: McGinn v. Benner, 180 Pa. 396; Allison's App., 77 Pa. 221; Head v. Meloney, 111 Pa. 99.

Plaintiffs are entitled to recover the damages for breaches of a contract by supplemental bill if in time, and they are in time if the original suit is not closed and ended so that it is no longer pending in court at all, for any purpose: Head v. Meloney, 111 Pa. 99; Bostwick v. Beach, 7 Cent. Repr. (N. Y.) 667; Chesterman v. Seeley, 19 Pa. C. C. R. 193; Joy v. St. Louis, 138 U. S. 1.

*Thomas Hart, Jr.*, with him *Conrad Hambleton* and *J. W. Wetzell*, for appellee.—Matters which have occurred since the original bill was filed and which are material to perfect the plaintiff's case may be introduced into the record by supplemental bill. But the supplemental matter must not contradict the statements of the original bill: 2 Daniel's Chancery Practice, *1536; Winton's App., 97 Pa. 385.

We submit that the matters of both the proposed additions have become res adjudicata : Winpenny v. Winpenny, 92 Pa. 440; Smith v. Kernochen, 7 Howard (U. S.), 198; Hites v. Irvine, 13 Ohio, 283; Head v. Meloney, 111 Pa. 99.

OPINION BY MR. JUSTICE McCOLLUM, July 11, 1900 :

The original bill was filed by the plaintiffs against the defendants therein, on March 4, 1893. On the 15th of the same month the plaintiffs applied for leave to amend their bill by making the receivers of the Philadelphia & Reading Railroad Company parties to the suit, and on May 9, 1893, the amendment as prayed for was allowed. On June 30, 1893, the defendants filed demurrers to the bill which were overruled on March 30, 1894, at which time the court directed the defendants to make answer to the bill within thirty days from that date. The answer was filed within the time prescribed, and on December 7, 1894, the plaintiffs joined issue on the matters alleged in it. The joinder was followed by evidence submitted by the litigants in support of their respective claims and by their requests for findings of fact and law. The evidence was closed on January 30, 1895, the case was argued on March 4, 1895, and the opinion of the court, together with the decree based thereon, was filed on June 26, 1895. The operation of the decree was suspended until July 27, 1895, to enable the litigants to file exceptions to it. The exceptions were filed within the time prescribed and the court upon a careful consideration dismissed them and directed the prothonotary to enter the decree of June 25, 1895 as its decree. All the parties to the suit appealed from the decree to this court where the questions involved in the bill and answer were duly considered and passed upon in a clear and comprehensive opinion by our Brother DEAN. The result of the hearing had on the appeal was an affirmance of the decree entered by the court

below. The grounds of the affirmance are fully and fairly
stated in the opinion as appears in 177 Pa. 555–564. All mat-
ters material to the decision of the case appear in the opinion
of the court below occupying twenty-nine pages extending from
page 520 to page 549.

The above recital of the proceedings under the original bill
is intended to direct attention to the matters included and con-
sidered in it. A reference to the opinion appearing in 177 Pa.
519, discloses all matters embraced and passed upon in the orig-
inal bill together with the findings of fact and conclusions of
law approved on appeal.

On February 14, 1898, the plaintiffs moved for leave to file
additions, by way of supplement, to their bill. The motion
was made sixteen months after the opinion and decree of the
appellate court was filed. In an opinion filed by the learned
court below on May 3, 1898, the motion for leave to file addi-
tions to the bill was refused, and from the refusal to grant the
leave prayed for the plaintiffs appealed to this court.

An examination of the proposed additions to the original bill
and of the assignments based on excerpts from the opinion of
the court below has satisfied us that no error was committed in
the refusal of leave to file the additions by way of supplement
to said bill. It is obvious that the additions proposed would,
if allowed, have resulted in a review of matters included in the
original bill, and that such a review was under the circumstances
plainly inadmissible. The cases cited by the plaintiffs do not,
on inspection, sustain their contention. It may also be stated
here that nothing appears in the opinion of this court in 177
Pa., hereinbefore referred to, which authorizes or sanctions it.
The assignments of error are therefore overruled and the appeal
is dismissed at the cost of the appellants.